ALMON, Justice.
This is an appeal from a summary judgment in favor of the defendant in a medical malpractice case. We affirm.
The essence of the complaint is that Dr. Wilder failed to perform certain diagnostic procedures which would have revealed an “ulcerated mass in the medial wall of the cecum just near the orifice to the appendix,” which was later removed surgically by another doctor.
Dr. Wilder, who limits his practice to general surgery, states the following in his affidavit:
“I first saw the plaintiff Warren Lee Martin as a patient on March 3, 1982 at my office in Decatur, Alabama. This was a referral from Dr. A.M. Mantione, a general practitioner in Decatur, Alabama. On the day preceding my seeing the patient, he had been given an upper gastrointestinal series of x-rays by Dr. John Sewell, a radiologist. His reports showed secondary ■ changes [sic] of an ulcer. The history which I obtained from the patient and his mother revealed that he had ulcer-like symptoms for several months with more symptoms the last few days. There was more complaint of pain in the right lower quadrant and he was tender in that area. He had good bowel sounds. I elected to admit him to the Decatur General Hospital to observe possible appendicitis or other abdominal problems requiring surgery and for treatment of what was suspected as an ulcer.
“The patient was admitted to the Decatur General Hospital on March 3, 1982, and I attach hereto as Exhibits ‘A’ and ‘B’ the initial history and physical examination which I dictated and the discharge summary which I dictated. At the time of discharge, the patient was asymptomatic. At that time I advised him to continue on his sta’ict ulcer diet, and prescribed for him Pathibamate and Mylan-ta. He was requested to return to see Dr. Mantione in two weeks.
“I received a call from the patient’s mother on March 29, 1982 at which time she advised that she had talked with Dr. Mantione last week and that the patient’s symptoms seemed to have recurred. I requested that she bring him in to see me and she did this on March 30, 1982.
“At that time his symptoms had in fact recurred and there was' in addition nausea and vomiting. I admitted him to the Decatur General Hospital on that date where he remained until April 8, 1982. Attached hereto as Exhibit ‘C’ is a true and correct copy of the discharge summary which I dictated following his discharge from the hospital.
“It is my professional opinion that in examining, diagnosing and treating Warren Lee Martin, I conformed to the standard of care ordinarily exercised by general surgeons practicing in the general neighborhood of Decatur, Alabama or in the national Medical neighborhood under the same or similar circumstances.”
The discharge summary of March 7, 1982, contained the following:
“HISTORY: Fourteen year old white male admitted to DGH for revaluation [sic] of possible appendicitis. Abdominal pain, known peptic ulcer disease. X-rays made as an outpatient showed peptic ulcer disease. On this admission, patient had stools examined times three for ova and parasites, none were demonstrated. Urinalysis was negative. Hemograms on this admission revealed 12 grams of hemoglobin, 35 hematocrit, 7,000 WBC with normal differential, range of 65 segs, 4 bands, 2 eos, 23 lymps, [sic] 6 monos. Amylase was normal. A urine for porphyrins, 24 hours, results are not back.
“The patient was started on conservative medical management and followed closely. The patient improved dramatically and was feeling much better, active, asymptomatic. The patient will be continued on medical management of peptic ulcer disease. He is given a prescription for Pathibamate 200 to be taken one q.i.d., Mylanta to be taken, q.i.d., and a strict ulcer diet. Parents were instructed to return to see Dr. Mantione in two *635 weeks. Report any difficulties prior to being seen at that time.”
The final discharge summary of April 8, 1982, states that:
“The patient had recently been in the hospital for similar symptoms. At that time workup revealed evidence of peptic ulcer disease without definite ulcer. The patient was started on treatment of Pa-thibamate, and ulcer diet. The patient had been doing fairly well, until the time of readmission at which time he had recurrent symptoms of epigastric abdominal pain, associated with nausea and vomiting. Workup on this admission revealed hemogram showed 11 grams, 34 hct. 6,500 WBC, with 62 segs, 4 bands, 2 eos, 30 lymphs and 2 monos. Chemistry profile was normal. Elevated alk. phos, 170 which is not remarkable for this age. SGOT was 105. Amylase was normal. Urinalysis negative. Stool for ova and parasite times three were negative. Urine for porphyrins was 119, up to 160 is normal. X-rays on this admission revealed a normal upper GI series. Previously noted acute inflammatory changes on March 2, 1982, were not identified on this examination. The patient had a normal IVP, Barium enema was not done. Consultation with Social Services, regarding possible evaluation was carried out. Copy of this report is on the chart. Appointment was made with the Mental Health Clinic. Appointment was made for 4 o’clock, April 14. The patient improved rather remarkably. He was continued on Pathibamate 200, Mylanta and strict ulcer diet. The patient is allowed home on 4/8/82, and will be followed in the Mental Health Clinic and followed in my office in approximately two weeks.”
After being discharged from the Decatur General Hospital, Martin moved with his family to Texas. During the move Martin had several bloody bowel movements and was admitted to the McKenna Memorial Hospital in New Braunfels, Texas, for further evaluation of abdominal pain and blood loss from the digestive system. There he was treated by Dr. Robert O. Martin, who performed the same tests as performed in Decatur, but, in addition, also did a technetium scan and a barium enema. Those tests revealed a cecal mass, and the boy was referred to Dr. H. Leonard Bentch, a gastroenterologist, for further evaluation at Methodist Hospital in San Antonio, Texas. Dr. Bentch performed additional tests and traced the boy’s problem to a Meckel’s diverticulum. Dr. Philip Manfredi performed a surgical resection of the Meckel’s diverticulum. The boy’s postoperative course was unremarkable and he has not had any recurrence of pain or bleeding.
In opposition to Dr. Wilder’s motion for summary judgment, Plaintiff Martin submitted his and his mother’s affidavits and the affidavit of Dr. Bentch. Dr. Bentch’s affidavit gave a history of the case; detailed the various tests and diagnostic procedures performed on Martin; and described the location of the ulcerated mass in the cecum and the subsequent removal. The affidavit concluded without giving a professional opinion concerning Dr. Wilder’s treatment of Martin.
Pertinent parts of Dr. Bentch’s affidavit are as follows:
“A fiberoptic colonscopy was performed as per the operative report dated April 30, 1982, a copy of which is attached hereto and labeled ‘Exhibit C.’ As a result of this procedure, an ulcerated mass was noted in the cecum along the medial wall. The recommendation was that the patient would require surgical resection to correct this condition.
“On May 2, 1982, Dr. Phillip Manfredi performed an exploratory laparotomy, resection of portion of ileum with Meck-el’s diverticulum, appendectomy, closure of perforation in distal terminal ileum and biopsy of mesenteric lymph node, all of which is reported in the operative report, a copy of which is attached hereto and labeled as ‘Exhibit D.’
“The patient’s postoperative course was unremarkable and he was discharged on May 8, 1982 with follow up by Dr. Manfredi and his primary physi- *636 cían, Dr. Robert Martin. A copy of the patient’s discharge summary is attached hereto and labeled ‘Exhibit E.’
“It is my professional opinion that the patient’s medical problems were caused by the Meckel’s diverticulum which was diagnosed and corrected with surgery.”
Dr. Wilder’s affidavit states that in examining, diagnosing, and treating Martin he conformed to the standard of care ordinarily exercised by general surgeons. After a motion for summary judgment is made and supported in accordance with Rule 56, A.R.Civ.P., it is incumbent upon the adverse, party to come forward with other evidence showing that there is a genuine issue for trial. Sartino v. First Alabama Bank of Birmingham, 435 So.2d 39 (Ala.1983).
Martin must establish that a genuine issue exists as to whether Dr. Wilder failed to exercise such reasonable care, diligence, and skill as other physicians and surgeons in the same general line of practice exercise, § 6-5-484, Code 1975.
The fact that a patient is later treated successfully under possibly different circumstances by another doctor is not evidence of malpractice, in the absence of expert testimony. Sims v. Callahan, 269 Ala. 216, 112 So.2d 776, 778 (1959).
Martin relies heavily on the case of Scott v. Mendoza, 428 So.2d 8 (Ala.1982), to defeat summary judgment. Dr. Mendoza treated a patient for a fractured thumb by relocation of the bone and casting the hand. The plaintiff’s expert, Dr. Smith, stated:
“ ‘It is my professional opinion that the thumb which I viewed had either
“ ‘(1) not been properly relocated;
“ ‘(2) had been injured since the time of its relocation by the prior attending physician, or
“ ‘(3) through its own motion had become dislocated.’ ” Id., at 10.
Summary judgment for Dr. Mendoza was reversed. In the present case there is no expert testimony whatsoever regarding Dr. Wilder’s treatment of the patient other than his own affidavit.
The affidavits presented by Martin in opposition to Dr. Wilder’s motion for summary judgment are insufficient to establish that Dr. Wilder deviated from the accepted standard of care. The affidavit of Dr. Bentch only sets forth his diagnosis and treatment of Martin and does not contain any reference to Dr. Wilder’s diagnosis or treatment.
This is not the kind of case which would allow a jury to pass upon Dr. Wilder’s treatment of a patient without expert medical testimony.
The judgment is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, BEAT-TY and HOUSTON, JJ., concur.